IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No. 21-cv-80127-BER

DAVID ADAMS, GERALD KASMERE,
and MICHAEL SHAW, on behalf of
themselves and others similarly
situated,

     Plaintiffs,

vs.                                                    **COLLECTIVE/CLASS ACTION**

PALM BEACH COUNTY,

     Defendant.

_____/

**SECOND AMENDED COMPLAINT**

The Plaintiffs, DAVID ADAMS, GERALD KASMERE, and MICHAEL SHAW,

by their undersigned attorney, make the following Second Amended Complaint on their own

behalf and on behalf of similarly situated current and former employees of Defendant PALM

BEACH COUNTY:

**Introduction**

1.    The Defendant PALM BEACH COUNTY ("PBC") operates four world-class

for-profit golf courses in competition with private golf courses. To gain a competitive

advantage over private businesses that offer the same services in and near Palm Beach

County, PBC employs individuals to perform services described below that are an integral

part of its golf course operations. PBC provides in-kind compensation of substantial value to

those employees but misclassifies them as "volunteers" and unlawfully fails to pay them the

minimum wage required by the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, et seq. ("FLSA") and the Florida Minimum Wage Act, Fla. Stats. § 448.110, and Fla. Const. Art. X §24 ("FMWA"). This action seeks redress for those statutory violations on behalf of the Plaintiffs named in the caption and similarly situated individuals as described in this Complaint. In addition, Plaintiff KASMERE brings a separate count for retaliation pursuant to 29 U.S.C. § 215(a)(3).

2.      Pursuant to the FLSA and the FMWA, the Named Plaintiffs, on behalf of themselves and all others similarly situated to them, seek the recovery of unpaid minimum wages, liquidated damages, and attorneys' fees and costs from Defendant.

3.      The Named Plaintiffs seek class certification to bring a collective action under the FLSA under 29 U.S.C. §216(b). The FLSA class is described below.

4.      The Named Plaintiffs also seek class certification under Rule 23 of the Federal Rules of Civil Procedure to bring a class action for violations of the FMWA. The FMWA class is described below.

## Parties

5.      Plaintiffs DAVID ADAMS, GERALD KASMERE, and MICHAEL SHAW (collectively "Named Plaintiffs") are and at all times relevant to this Second Amended Complaint were adult residents of Florida.

6.      Defendant PBC is a municipality of the State of Florida and is a "public agency" as that term is defined in 29 U.S.C. § 203(x).

## Jurisdiction and Venue

7.      This Court has jurisdiction over this action pursuant to the FLSA, 29 U.S.C. §216(b), and 28 U.S.C. §§ 1331 and 1337. This court has supplemental jurisdiction over the

claims arising under the Florida Minimum Wage Act, Florida Statutes § 448.110 and Fla. Const. Art. X § 24, by virtue of 28 U.S.C. § 1367(a) because the state claim is so related to the federal claim that they form part of the same case or controversy. The state law claim shares nearly all operative facts with his federal law claim and the parties are identical.  Resolving both state and federal claims in a single action serves the interests of judicial economy, convenience, and fairness to the parties.

8.      Each of Defendant's golf facilities where the violations which are the subject matter of this Complaint took place are located in Palm Beach County, Florida, within the jurisdiction of this Court. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in Palm Beach County, Florida.

## FLSA and FMWA Applicability

9.      The Named Plaintiffs and similarly situated individuals identified in this Complaint were, at all times relevant to this Complaint, suffered or permitted to work for PBC and were therefore employees of PBC within the meaning of the FLSA.

10.     Defendant PBC operates four golf courses identified below in Palm Beach County, Florida as profit-making commercial enterprises and derives substantial revenue from the operation of those golf courses. The Named Plaintiffs and similarly situated individuals were employed at one or more of those golf courses at times that are relevant to this Complaint.

11.     Defendant PBC is an employer as that term is defined in the FLSA, 29 US.C. § 203(e)(2)(c) and the FMWA, Fla. Stats. §§ 448.109(1)(a) and 448.110, and the Florida

Constitution Art. X § 24.[1]

12.     Defendant PBC is an enterprise engaged in an industry affecting interstate commerce in that it has employees engaged in interstate commerce or in the production of goods for commerce, or has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for interstate commerce by any person; and it is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) which has employees subject to the provisions of the FLSA.

## General Allegations

### Misclassification of Plaintiffs in Violation of FLSA and FMLA

13.     Plaintiff, DAVID ADAMS, performed work at the direction and for the benefit of PBC from on or about June 2015 until April 2019. Plaintiff ADAMS worked at the Osprey Point Golf Club. He performed such duties as he was assigned by management. His most frequent assignment was to serve as a cart attendant, but he also performed services in other positions, including but not limited to ranger and range ball picker.

14.     PBC misclassified Plaintiff ADAMS as a "volunteer" and paid him no wages for the services he provided. Plaintiff ADAMS was not allowed to choose the specified duties for which he allegedly "volunteered." Plaintiff ADAMS was required to follow strict rules with regard to the performance of his services, such as not sitting while he was on duty.

---

[1]Fla. Const. Art. X §24(f) declares an "inten[tion] that case law, administrative interpretations, and other guiding standards developed under the federal FLSA shall guide the construction of this amendment and any implementing statutes or regulations." Id. § 24(f). That subsection reflects that the Wage Amendment should operate like the federal minimum wage law. Id. § 24(f); see Minimum Wage, 880 So. 2d at 641 ("point[ing] out that the . . . amendment . . . incorporates a reference to the entire body of law under the FLSA"). Accordingly, the body of law that encompasses the FLSA is likewise applicable to the FMWA.

15.     PBC provided in-kind compensation to ADAMS by promising him that he could play as many rounds of golf as he wanted at a substantially discounted rate, provided he worked a defined number of hours (at least one shift of at least 7 hours per week) and subject to certain days, times, and locations where discounted golf rounds were made available. PBC also allowed Plaintiff ADAMS to accept tips as part of his compensation.

16.     Plaintiff ADAMS used the discounted golf rounds he received as compensation from October 2016 through November 2019. During that time, he received discounted rounds of golf on approximately 31 occasions and saved thousands of dollars in golf fees.

17.     Plaintiff, MICHAEL SHAW, performed work at the direction of, and for the benefit of, PBC from on or about July 2013 until September 2020. Plaintiff SHAW worked at the Osprey Point Golf Club. He performed such duties as he was assigned by management. PBC trained him to work in a variety of positions. He initially worked as a ranger, but his most frequent assignment was to serve as a cart attendant.

18.     PBC misclassified Plaintiff SHAW as a "volunteer" and paid him no wages for the services he provided. Plaintiff SHAW was not allowed to choose the specified duties for which he allegedly "volunteered." Plaintiff SHAW was required to follow strict rules with regard to the performance of his services, such as not sitting while he was on duty.

19.     PBC provided in-kind compensation to Plaintiff SHAW by promising him that he could play as many rounds of golf as he wanted at a substantially discounted rate, provided he worked a defined number of hours (at least one shift of at least 7 hours per week) and subject to certain days, times, and locations where discounted golf rounds were made available. PBC also allowed Plaintiff SHAW to accept tips as part of his compensation.

20.     Plaintiff SHAW made extensive use of the discounted golf rounds he received as compensation from February 2019 through August 2019. During that time, he received discounted rounds of golf on approximately 43 occasions and saved thousands of dollars in golf fees.

21.     Plaintiff, GERALD KASMERE, performed work at the direction of, and for the benefit of, PBC from on or about January 2016 until he was placed on a furlough due to a pandemic-related closure of PBC's golf courses in the spring and summer of 2020. Plaintiff KASMERE worked at the Osprey Point Golf Club. He performed such duties as he was assigned by management. Plaintiff KASMERE's most frequent assignment was to serve as a cart attendant but he was cross-trained to perform, and did perform, other jobs, including ranger and range assistant.

22.     PBC misclassified Plaintiff KASMERE as a "volunteer" and paid him no wages for the services he provided. Plaintiff KASMERE was not allowed to choose the specified duties for which he allegedly "volunteered." Plaintiff KASMERE was required to follow strict rules with regard to the performance of his services.

23.     PBC provided in-kind compensation to Plaintiff KASMERE by promising him that he could play as many rounds of golf as he wanted at a substantially discounted rate, provided he worked at least one shift per week of 7 or more hours and subject to certain days, times, and locations where discounted golf rounds were made available. PBC also allowed Plaintiff KASMERE to accept tips as part of his compensation.

24.     Plaintiff KASMERE used the discounted golf rounds he received as compensation from October 2016 through early March 2020. During that time, he received discounted rounds of golf on approximately 95 occasions and saved thousands of dollars in

golf fees.

25.     The Named Plaintiffs and the similarly situated workers described below performed a variety of duties to serve customers who play golf at PBC's golf courses. Those duties are routinely provided by workers at private golf courses that compete against PBC for customers. The services enhance the value of the golfing experience offered by golf courses and are essential to attract customers and to maintain the reputation of a golf course as a premiere place to play golf. Golf course customers expect those services to be provided and factor in the availability of those services when they decide where to golf. The services are integral to the operation of golf courses that are comparable to those operated by PBC. However, the workers who provide those services at private golf courses are paid wages consistent with the FLSA and the FMWA, unlike workers who provide the same services for PBC.

26.     Services commonly provided by the Named Plaintiffs and similarly situated workers included greeting customers, carrying golf clubs to and from customers' cars, loading golf clubs into golf carts, cleaning customers' golf clubs and golf balls, cleaning and charging golf carts, furnishing customers with scorecards and pencils, cleaning golf carts, retrieving carts from cart barns to assure their availability for customers, returning carts to cart barns for storage, assisting the starter, patrolling the range, raking sand traps, policing the pace of play, filling divots with sand and replenishing supplies of sand, picking up and disposing of trash, retrieving driving range balls, and washing golf balls for customer use.

27.     PBC employs and misclassifies workers as "volunteers" to provide the above-described services at Osprey Point Golf Course, Okeeheelee Golf Course, and Park Ridge Golf Course. PBC also employs and misclassifies workers as "volunteers" at its teaching

facility, the John Prince Golf Learning Center. All four of those enterprises are located in Palm Beach County and operated by PBC.

28.     Defendant posts advertisements on its websites soliciting individuals for the positions of bag drop attendants, course rangers, driving range attendants, starters assistants, tee times administrators, and other positions that it describes as "volunteer" positions. Examples of those advertisements are attached as Composite Exhibit 1.

29.     The positions that were filled by the Named Plaintiffs and similarly situated individuals were and are vital and necessary to the operation of Defendant's golf facilities.

30.     The Defendant suffered and permitted the Named Plaintiffs and similarly situated individuals to work and continues to do so, and thus employed and continues to employ workers that it misclassifies as "volunteers."

31.     As a result of the misclassification of the Named Plaintiffs and similarly situated individuals as "volunteers," Defendant's golf facilities obtain free labor as Defendant employs but does not pay volunteers to perform the same labor for which private golf facilities must pay employees wages required by the FLSA and FMWA. If not for the Defendant's misclassification of employees as "volunteers," its golf facilities would have to hire and pay employees to perform the job duties of the unpaid "volunteers."

32.     Defendant's practice of misclassifying employees as "volunteers" demonstrates a widespread pattern and practice of avoiding its obligation to pay employees as required by the FLSA and FMWA, thus creating a minimum wage violation for each hour that each volunteer worked.

<u>Compensation of Misclassified Employees</u>

33.     Workers who were misclassified as "volunteers" for providing the services

described above were promised and expected to receive, and did receive, in-kind compensation from PBC in the form of heavy discounts for an unlimited number of rounds of golf. Workers qualified for that compensation by working at least one shift of at least 7 hours per workweek. Because the promised rounds of discounted golf are unlimited, the promised discounts had substantial economic value to the workers. For example, while rates vary, PBC typically charges customers $96 for a round of golf at Osprey Golf Course. However, workers who were misclassified as "volunteers" and who worked a sufficient number of hours to qualify for the discount would typically pay only $5 for a round of golf, resulting in an economic benefit to the worker of $91 per round. Discounts at other PBC golf courses were of comparable value. A worker who was an avid golfer could work one shift during a workweek and then play five or more discounted rounds during the remainder of the week, earning compensation that had an economic benefit of at least $455 in that week.

34.     All workers who were misclassified as "volunteers" as described in this Complaint were promised the in-kind compensation described above, whether or not they chose to take advantage of it, and therefore did not meet the definition of public service "volunteer" in 29 C.F.R. § 553.101(a).

35.     The in-kind compensation described above is not commonly or traditionally provided to volunteers of state and local government agencies.

<u>Collective and Class Members</u>

36.     PBC has used various position titles to describe the workers who are similarly situated to the Named Plaintiffs. Titles currently in use include Bag Drop Attendant, Player's Assistant, Driving Range Attendant, and Assistant Starter. Other titles that have been used to describe some of those positions, whether formally or informally, include Cart Attendant,

Ranger, Course Ranger, and Range Ball Picker.

37.     At Osprey Golf Course alone, 87 to 105 workers are available to work at any given time who have been misclassified as "volunteers" and who perform the services described above.

38.     The Named Plaintiffs seek class certification to bring a collective action under the FLSA pursuant to 29 U.S.C. §216(b). The FLSA class is defined as: "All individuals currently or formerly working without wages at any of the four golf facilities owned or operated by Defendant Palm Beach County at any time from January 22, 2018 to the present in any of the following positions: Bag Drop Attendant, Golf Cart Attendant, Player's Assistant, Ranger, Course Ranger, Driving Range Attendant, Range Ball Picker, and Assistant Starter."

39.     At least several hundred individuals fall within the class described in the preceding paragraph, including both current and former workers who were misclassified as "volunteers" from January 22, 2018 to the present.

40.     The Named Plaintiffs and the proposed FLSA class members are similarly situated because they were subjected to the same failure to be paid minimum wage in violation of the FLSA, 29 U.S.C. § 206. During the time period in the FLSA class description, the Defendant employed the Named Plaintiffs and the Proposed Class Members to perform work in exchange for in-kind compensation. The Named Plaintiffs and proposed Class Members were promised and expected unlimited rounds of golf at a substantial discount for their labor, providing them with compensation that had substantial economic value. However, the described in-kind compensation was the only compensation paid to the Named Plaintiffs and proposed Class Members for their work. The Defendant paid the Named Plaintiffs and

proposed Class Members no cash or equivalent wage for their work. The Defendant attempted to evade the wage protections of the FLSA (including its requirement that minimum wage payments be made in cash or its equivalent) by classifying the Named Plaintiffs and proposed Class Members as "volunteers" rather than employees. Since the Named Plaintiffs and proposed Class Members were not paid cash wages, they all suffered identical harms caused by the Defendant's violations of the FLSA and are entitled to an award of minimum wages and liquidated damages.

41.     Each of the four golf courses identified in this Complaint and operated by PBC employed members of the FLSA class in exactly the same fashion, required misclassified volunteers to work the same minimum number of hours per month, promised the same in-kind compensation to all misclassified volunteers, and did not pay the misclassified volunteers any wages.

42.     The Named Plaintiffs also seek class certification under Rule 23 of the Federal Rules of Civil Procedure of the following class under the FMWA: "All individuals currently or formerly working without wages at any of the four golf facilities owned or operated by Defendant Palm Beach County at any time from January 22, 2016 to the present in any of the following positions: Bag Drop Attendant, Golf Cart Attendant, Player's Assistant, Ranger, Course Ranger, Driving Range Attendant, Range Ball Picker, and Assistant Starter."

43.     At least several hundred individuals fall within the class described in the preceding paragraph, including both current and former workers who were misclassified as "volunteers" from January 22, 2016 to the present.

44.     The Named Plaintiffs and the proposed FMWA class members are similarly situated because they were subjected to the same failure to be paid minimum wage in violation

of Fla. Sta. §448.10 and Fla. Const. Art. X §24(c). During the time period in the FMWA class description, the Defendant employed the Named Plaintiffs and the Proposed Class Members to perform work in exchange for in-kind compensation. The Named Plaintiffs and proposed Class Members were promised and expected unlimited rounds of golf at a substantial discount for their labor, providing them with compensation that had substantial economic value. However, the described in-kind compensation was the only compensation paid to the Named Plaintiff and proposed Class Members for their work. The Defendant paid the Named Plaintiffs and proposed Class Members no cash or equivalent wage for their work. The Defendant attempted to evade the wage protections of the FMWA (including its requirement that minimum wage payments be made in cash or its equivalent) by classifying the Named Plaintiffs and proposed Class Members as "volunteers" rather than employees. Since the Named Plaintiffs and proposed Class Members were not paid cash wages, they all suffered identical harms caused by the Defendant's violations of the FMWA are entitled to an award of minimum wages and liquidated damages.

45.     Each of the four golf courses identified in this Complaint and operated by PBC employed members of FMWA class in exactly the same fashion, required misclassified volunteers to work the same minimum number of hours per month, promised the same in-kind compensation to all misclassified volunteers, and did not pay the misclassified volunteers any wages.

46.     The identities of the FLSA and FMWA class members, as well as the actual days and hours worked by each proposed class member, is known to the Defendant as it requires all "volunteers" to either punch a time clock or sign an attendance sheet, which records are maintained by and in the possession, custody and control of Defendant.

## Basis for Class and Collection Action Relief

47.     Since January 2016, Defendant subjected all misclassified "volunteers" described in this Complaint to the same illegal practice of failing to provide pay wages for work performed, as required by the FLSA and FMWA.

48.     The members of the FLSA collective were all subjected to a common policy and practice in violation of the FLSA, 29 U.S.C. § 206, because all proposed FLSA class members were subjected to an identical compensation scheme that required them to work in exchange for discounts on rounds of golf rather than wages. All members of the FLSA collective are also entitled to the same remedy in the form of back pay of minimum wage for each hour they worked and an award of liquidated damages.

49.     The claims under the FLSA may be pursued by similarly situated persons who opt-in to this case pursuant to 29 U.S.C. § 216(b).

50.     The Named Plaintiffs and all members of the proposed FLSA class performed work for Defendant after being misclassified as volunteers and were not paid at least the full minimum wage for all hours worked as required by the FLSA.

51.     The Named Plaintiffs and all FLSA class members worked for Defendant during or after January 2018.

52.     The members of the FMWA class were all subjected to a common policy and practice in violation of the FMWA, Fla. Stats. § 448.110 and Fla. Const. Art. X § 24, because all proposed FMWA members were subjected to an identical compensation scheme that required them to work in exchange for discounted rounds of golf rather than wages. All members of the FMWA class are also entitled to the same remedy in the form of back pay of minimum wage for each hour they worked and an award of liquidated damages.

53.     The claims under the Florida Minimum Wage Act and the Florida Constitution may be pursued by all similarly situated persons who choose not to opt-out of the class pursuant to Fed. R. Civ. P. 23.

54.     The Named Plaintiffs and all FMWA class members worked for Defendant during or after January 2016.

### Class Action Allegations

55.     The Named Plaintiffs and all class members in the FMWA Rule 23 class performed work for Defendant after being classified as volunteers and were not paid at least the full minimum wage for all hours worked as required by Florida law.

56.     A class action to vindicate the rights of proposed class members is maintainable pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

57.     As all proposed class members were employed in Palm Beach County, concentrating all claims in this forum will resolve those claims efficiently.

58.     The Named Plaintiffs are unaware of any other litigation concerning the controversy already commenced by proposed class members.

59.     Potential members of the FMWA Rule 23 class are so numerous that joinder of all members is impracticable. The exact number of members of the class can be determined by reviewing Defendant's records. However, the Named Plaintiffs reasonably believe that there are over six hundred (600) eligible individuals in the Rule 23 class.

60.     The Named Plaintiffs will fairly and adequately protect the interests of the class and have retained counsel who are experienced and competent in class action and employment litigation.

61.     The Named Plaintiffs have no interests that are contrary to, or in conflict with,

the members of the class.

62.     A class/collective action suit is superior to other available means for fair and efficient adjudication of this lawsuit. The damages suffered by individual members of the class may be relatively small when compared to the expense and burden of litigation, making it burdensome for members of the class to individually seek redress for the wrongs done to them. Absent these actions, many members of the class likely will not obtain redress of their injuries and Defendant will retain the proceeds of their violations of the FLSA and FMWA.

63.     Furthermore, even if every member of the class could afford individual litigation against Defendant, multiple lawsuits would be unduly burdensome to the judicial system. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the class and provide for judicial consistency.

64.     There is a well-defined community of interest in the questions of law and fact affecting the class as a whole. The questions of law and fact common to the class predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

a.     Whether Defendant employed collective and class members within the meaning of the applicable statutes, including the FLSA and FMWA;

b.     Whether Defendant failed to pay the Named Plaintiffs and members of the collective and class all minimum wages owed to them;

c.     What remedies are appropriate compensation for the damages caused to the Named Plaintiffs and each member of the collective and class;

d.     Whether Defendant's failure to compensate the Named Plaintiffs and the class members at the applicable minimum wage rates was willful, intentional, or

done with reckless disregard of the rights of collective and class members.

65.     The relief sought is common to the entire class including, inter alia:

    a.     payment by the Defendant of actual damages caused by their failure to pay minimum wages pursuant to FLSA and the FMWA;

    b.     payment by the Defendant of liquidated damages caused by their failure to pay minimum wages pursuant to FLSA and the FMWA;

    c.     payment by the Defendant of the costs and expenses of this action, including attorneys' fees for Plaintiffs' Counsel; and

    d.     equitable relief ordering Defendant to cease and desist from its illegal practice of failing to pay all minimum wages required by law.

66.     The Named Plaintiffs' claims are typical of the claims of members of the class. The Named Plaintiffs and members of the class have sustained damages arising out of the same wrongful and uniform employment policy of Defendants by failing to timely pay, in full, the minimum wages required by law, in violation of the FLSA and FMWA.

67.     The Named Plaintiffs know of no difficulty that will be encountered in the management of this litigation that would preclude its continued maintenance.

## COUNT I: VIOLATION OF FAIR LABOR STANDARDS ACT
### (29 U.S.C. § 206)

68.     The allegations in Paragraphs 1 through 67 are realleged and fully incorporated by reference herein.

69.     By their actions alleged above, Defendant willfully, knowingly and/or recklessly violated the provisions of FLSA, which requires minimum wages to be paid to employees, including provisions set forth in 29 U.S.C. §§ 206 and 218(a).

70.     At all relevant times, Defendant has been, and continues to be, an employer

and an enterprise engaged in interstate commerce and/or the production of goods for commerce, under the FLSA.

71.     At all relevant times, Defendant employed and/or continues to employ the Named Plaintiffs and other similarly situated employees.

72.     As set forth above, Defendant has throughout the applicable limitations period since January 2018, had a policy and practice of failing to pay wages to all of their golf facility volunteers, including the Named Plaintiffs. Accordingly, each workweek that Defendant failed to pay wages to the Named Plaintiffs and those similarly situated to them, a minimum wage violation occurred whereby the employees became entitled to an award of minimum wages and liquidated damages.

73.     Defendant's failure to pay the Named Plaintiffs and other similarly situated employees the full minimum wage is in violation of 29 U.S.C. § 206.

74.     The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

75.     The Named Plaintiffs demand a trial by jury.

WHEREFORE, Plaintiffs, DAVID ADAMS, GERALD KASMERE, and MICHAEL SHAW, on behalf of themselves and those similarly situated, demand judgment against Defendant for unpaid minimum wages, an additional and equal amount of liquidated damages, reasonable attorneys' fees and costs incurred in this action, and any and all further relief that this Court determines to be just and appropriate.

### COUNT II: VIOLATION OF THE FLORIDA MINIMUM WAGE ACT
**(Fla. Stat. §448.110 & Fla. Const., ART. X, § 24)**

76.     The Named Plaintiffs reallege and reincorporate all allegations contained in Paragraphs 1 through 67 as though fully stated herein.

77.     At all relevant times, Defendant has been, and continues to be, an employer engaged in interstate commerce and/or the production of goods for commerce, under the Florida Minimum Wage Act and Florida Constitution.

78.     At all relevant times to this Complaint, Defendant employed, and/or continues to employ the Named Plaintiffs and similarly situated potential class members.

79.     As set forth above, Defendant has throughout the applicable limitations period since January 2016, had a policy and practice of failing to pay wages to all of their golf facility volunteers, including the Named Plaintiffs. Accordingly, each workweek that Defendant failed to pay wages to the Named Plaintiffs and those similarly situated to them, a minimum wage violation occurred whereby the employees became entitled to an award of minimum wages and liquidated damages.

80.     As a direct and proximate result of Defendant's deliberate non-payment of the minimum wages which the Named Plaintiffs and other similarly situated employees were entitled to, the Named Plaintiffs and those similarly situated employees have suffered damages.

81.     Defendant's policy and practice violates the Florida Minimum Wage Act's and Florida Constitution's minimum wage payment requirements.

82.     Defendant's failure to pay the Named Plaintiffs and other similarly situated class members the full minimum wage is a violation of the Florida Minimum Wage Act, Fla. Stats. §448.110, and Article X, Section 24 of the Florida Constitution.

83.     The foregoing conduct of Defendants, as alleged, constitutes a willful violation of the Florida Minimum Wage Act and Florida Constitution.

84.     On January 21, 2021, Plaintiff Kasmere, through counsel, provided the

Defendant with written notice of the minimum wage violation that he suffered. The notice advised the Defendant of the Plaintiff's intent to initiate an action to enforce the FMWA violations identified above on his own behalf and on behalf of a class of similarly situated employees. The notice identified the minimum wage to which the Plaintiff claimed entitlement, the estimated work dates and hours for which payment was sought, and the total amount of alleged unpaid wages through the date of the notice. Prior to the filing of the Complaint in this action, the Defendant responded to that notice with a denial of liability and a statement that no unpaid wages would be paid.

85.     On February 27, 2021, the Plaintiffs, through counsel, provided the Defendant with written notice of the minimum wage violation suffered by the Named Plaintiffs as well as the opt-in plaintiffs to date. The notice advised the Defendant of their intent to initiate an action to enforce the FMWA violations identified above on their own behalf and on behalf of a class of similarly situated employees. The notice identified the minimum wage to which those individuals claimed entitlement, the estimated work dates and hours for which payment was sought, and the total amount of alleged unpaid wages through the date of the notice. Fifteen days have lapsed since service of that notice and the Defendant has not paid the claimed wages or otherwise resolved (or demonstrated any intent to resolve) the unpaid wage claims of the individual aggrieved employees or the class of similarly situated employees.

86.     The Named Plaintiffs demand a trial by jury.

WHEREFORE, Plaintiffs, DAVID ADAMS, GERALD KASMERE, and MICHAEL SHAW, on behalf of themselves and those similarly situated, demand judgment against Defendant for unpaid minimum wages, an additional and equal amount of liquidated damages, reasonable attorneys' fees and costs incurred in this action, and any and all further

relief that this Court determines to be just and appropriate.

**COUNT III: RETALIATION UNDER THE FLSA (as to KASMERE only)**
**(29 U.S.C. §215(a)(3))**

87.     Plaintiff GERALD KASMERE (hereinafter KASMERE), realleges, as if fully set forth in Count III, the allegations of paragraphs 1, 2, 5 through 12, and 21 through 35 above.

88.     KASMERE was on furlough during part of 2020 while Osprey Golf Club was closed due to the pandemic. KASMERE continued to be employed by PBC during his furlough in the position described in this Complaint.

89.     KASMERE met with a manager of Osprey Golf Club in 2020 to discuss his return to work following the end of the furlough. The manager explained that Osprey Golf Club needed workers in the "volunteer" positions because some workers who had previously been in those positions were unable or unwilling to return to work because of the pandemic.

90.     During the October 2020 conversation, the manager explained new pandemic-related policies for "volunteers," including a policy that prohibited volunteers from cleaning golf clubs or loading/unloading customers' golf bags. The manager also explained that, as a matter of policy, "tip jars" were being removed. KASMERE complained that removing the tip jars would make it even harder on "volunteers." Kasmere objected that it was bad enough that the County did not pay wages and obtained free labor from "volunteers" who were entitled to wage payments.

91.     Immediately after KASMERE objected to PBC's practice of not paying wages for positions it classified as "volunteer" positions, the manager advised KASMERE for the first time that no positions were available.

92.     The claim that no positions were available was untrue, given that the manager

had previously stated that Osprey Golf Course needed people to fill the positions.

93.     The manager, on behalf of PBC, relied on a pretext to conceal his motivation for retaliating against KASMERE because KASMERE had objected to PBC's unlawful policy of failing to pay wages to individuals it classified as "volunteers."

94.     KASMERE had complained on previous occasions to his supervisor and other golf course officials employed by Defendant that its volunteer program violated wage laws by failing to pay cash wages to individuals who were classified as "volunteers."

95.     KASMERE's opposition and opinions about the legality of Defendant's volunteer program were well-known by his supervisors and management.

96.     The manager with whom KASMERE spoke in October 2020 did not even hint that KASMERE would not be allowed to return as a volunteer until KASMERE renewed his objection to not being paid wages. As a result of KASMERE's opposition to the County's wage law violations, the Defendant terminated KASMERE's services.

97.     Defendant's decision to terminate KASMERE was in direct response to his many complaints about the legality of Defendant's volunteer program, including complaints that were made shortly before he was furloughed and after his return from furlough.

98.     Defendant's actions as more particularly described above were directly related to and in response to KASMERE's opposition about Defendant's volunteer program, since the Defendant identified no other justifiable reasons for Defendant's adverse action when Defendant advised KASMERE that his services were terminated.

99.     KASMERE's opposition and concern that he communicated to Defendant constitutes statutorily protected conduct under Section 15(a)(3) of the FLSA.

100.    Defendant's adverse treatment of KASMERE was a direct result of Plaintiff's

opposition to and questioning of Defendant's failure to pay wages to individuals who were classified as volunteers.

101.    The conduct more specifically alleged above violated KASMERE's rights against retaliation for opposing unlawful employment actions, which retaliation is proscribed by the FLSA.

102.    KASMERE requests trial by jury.

103.    KASMERE is entitled pursuant to 29 U.S.C. § 216(b), to recover from Defendant:

        a.     All lost wages that are due, including pre-judgment interest;

        b.     As liquidated damages, an amount equal to lost wages;

        c.     Compensatory damages for emotional pain and suffering;

        d.     The costs of this action; and,

        e.     A reasonable attorney's fee.

WHEREFORE, KASMERE prays that this court will grant judgment against Defendant:

a.  awarding all lost wages found by the court to be due to him, including pre-judgment interest;

b. awarding payment of liquidated damages in an amount equal to the lost wages due to him;

c.  money damages to compensate KASMERE for emotional pain and suffering endured;

d.  awarding KASMERE his costs, including a reasonable attorney's fee pursuant to 29 U.S.C. § 216(b); and

e. granting such other and further relief as is just.

**CONSENT TO JOIN**
**PURSUANT TO 29 U.S.C. §216(b)**

We, DAVID ADAMS, MICHAEL SHAW and GERALD KASMERE, hereby

consent and agree and opt-in to become Plaintiffs in this lawsuit brought under the Fair

Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq.

*/s/ David Adams*
David Adams

*/s/ Michael Shaw*
Michael Shaw

*/s/ Gerald Kasmere*
Gerald Kasmere

Dated: August 5, 2021
Plantation, Florida

Respectfully submitted,

*/s/ Robert S. Norell*
Robert S. Norell, Esq. (Fla. Bar No. 996777)
E-Mail: rob@floridawagelaw.com
**ROBERT S. NORELL, P.A.**
300 N.W 70th Avenue
Suite 305
Plantation, Florida 33317
Telephone: (954) 617-6017
Facsimile: (954) 617-6018
*Counsel for Plaintiffs*