UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-80127-BER

DAVID ADAMS, GERALD KASMERE,
and MICHAEL SHAW, on behalf of
themselves and others similarly situated,

Plaintiffs,

v.

PALM BEACH COUNTY,

Defendant.

_____/

## ORDER ON MOTION TO DISMISS SECOND AMENDED COMPLAINT
### [ECF No. 59]

Plaintiffs were golf course attendants at the Osprey Point Golf Course operated by Palm Beach County ("the County"). As part of that arrangement, they were permitted to play golf for a reduced greens fees. They allege that they were employees of Palm Beach County entitled to minimum wage payments. Separately, Plaintiff Gerald Kasmere alleges that he suffered employment retaliation after he complained about not receiving minimum wages. The County argues that the Plaintiffs fall within an exception to the minimum wage laws for public agency volunteers.

I have reviewed the Second Amended Complaint and its exhibits, the Motion to Dismiss, the Response, and the Reply. ECF Nos. 54, 55, 59, 60, 63. I am fully advised and this matter is ripe for decision. For the following reasons, the Motion to Dismiss is GRANTED WITH PREJUDICE.

## I.      PLAINTIFFS' CLAIMS

The Second Amended Complaint (SAC) alleges that the County failed to pay all Plaintiffs a minimum wage in violation of federal law (Count I), the Florida Minimum Wage Act ("FMWA") and Article X §24 of the Florida Constitution (Count II).  It also alleges retaliation against Mr. Kasmere in violation of the Fair Labor Standards Act (Count III).  The SAC also includes class action allegations that have been bifurcated.  *See* ECF Nos. 40, 42.

I previously dismissed the first Amended Complaint because it failed to plausible allege that the Plaintiffs were employees of the County who could invoke the minimum wage and retaliation laws.  More specifically, it did not allege how frequently, if at all, the Plaintiffs used the reduced greens fees privilege. ECF No. 52.

## II.      ALLEGATIONS IN THE SECOND AMENDED COMPLAINT

The County solicited golf course volunteers through the website for its Parks & Recreation Department. ¶ 28. The posting for Osprey Point stated:

> This is a high volume 27 hole golf facility that opened in 2010. The course is the first in Florida to receive Audubon Certified Classic Sanctuary status. Volunteers serve as course rangers, driving range attendants and bag drop attendance. Hours vary. Nights and weekends preferred. Osprey Point volunteers enjoy being outdoors, getting to know others with similar interests and reduced fees to play and practice golf.

ECF No. 55-1 at 2.  The website further states in red print "** This site doesn't provide court ordered volunteer hours."  And, it says an unlimited number of volunteers are needed.  *Id.*  Finally, it states, "Osprey Point volunteers enjoy . . . reduced fees to play and practice golf."  *Id.*

2



### Osprey Point Golf Course



**Project Description:**
This is a high volume 27 hole golf facility that opened in 2010. The course is the first in Florida to receive Audubon Certified Classic Sanctuary status. Volunteers serve as course rangers, driving range attendants and bag drop attendants. Hours vary. Nights and weekends preferred. Osprey Point volunteers enjoy being outdoors, getting to know others with similar interests and reduced fees to play and practice golf.

- Minimum Age requirement: 16 with driver's license. Golf Cart detailing is available to those without a driver's license on a limited basis.
- Must enjoy serving guests and fellow staff members, possess a positive personality, be flexible in job assignments, be a team player.
- Some golf knowledge preferred but not required.
- Must be available at least 6 months per year to qualify

**\*\*This site doesn't provide court ordered volunteer hours.**

| | |
|---|---|
| **Volunteers Needed:** | Unlimited |
| **Project Meeting Location:** | Osprey Point Golf Course |
| | 12551 Glades Road |
| | Boca Raton, FL 33498 |
| | View Location Map |
| **Project Organizer:** | Osprey Point Golf Course |
| | ospreypointgc@pbcgov.org |
| | 561-482-2868 |
| **Project Category:** | Palm Beach County |

Apply to participate in this project          Record

< Back to Service Project Listing

Plaintiffs performed work at the direction of, and for the benefit of, the County at the Osprey Point Golf Club. ¶¶ 13, 17, 21.[1] They performed duties as assigned by

---

[1] Citations in this Order to "¶" are taken from the Second Amended Complaint, ECF No. 54.

management, including being a cart attendant, ranger, ranger assistant, and range ball picker. ¶¶ 13, 17, 21. They were required to follow strict rules with regard to the performance of their duties, such as not sitting while on duty. ¶¶ 14, 18, 22. They were not paid wages. ¶¶ 14, 18, 22.  But, they were offered discounted rounds of golf if they worked at least one shift of at least 7 hours per workweek. ¶¶15, 19, 23, 33. And, they were allowed to accept tips.  ¶¶ 15, 19, 23. A typical greens fee for a paying customer at Osprey Point was $96.  ¶33.  Plaintiffs were permitted to play for five dollars. *Id.*

Between October 2016 and November 2019, Plaintiff Gerald Adams played approximately 31 discounted rounds of golf. ¶ 16.  Between February 2019 and August 2019, Plaintiff Michael Shaw played approximately 43 discounted rounds of golf.  ¶20. Between October 2016 and March 2020, Plaintiff Gerald Kasmere played approximately 95 discounted rounds of golf.  ¶24.

At unspecified times prior to October 2020, Mr. Kasmere complained several times to his supervisor and other golf course officials employed by the County that he was not being paid cash wages for his services, which violated federal and state wage laws. ¶ 94. He was on furlough in 2020 while Osprey Point was closed due to the COVID-19 pandemic.  ¶ 88.  In October 2020, Mr. Kasmere met with a manager from Osprey Point to discuss returning there after the furlough ended.  The manager explained that Osprey Point "needed workers in the 'volunteer' positions because some workers who had previously been in those positions were unable or unwilling to return to work because of the pandemic."  ¶ 89. The manager further explained that

4

new pandemic-related policies would prohibit Mr. Kasmere from cleaning golf clubs or loading/unloading golf bags. ¶90. He also explained that the tip jars were being removed. *Id.* Mr. Kasmere "complained that removing the tip jars would make it even harder on 'volunteers.'" *Id.* Mr. Kasmere "objected that it was bad enough that the County did not pay wages and obtained free labor from its 'volunteers' who were entitled to wage payments." *Id.* Mr. Kasmere was then told "for the first time that no positions were available." ¶ 91.

### III.   LEGAL PRINCIPLES

A. *Rule 12(b)(6)*

On a motion to dismiss under Rule 12(b)(6), the Court must view the well-pleaded factual allegations in a claim in the light most favorable to the non-moving party. *Dusek v. JPMorgan Chase & Co.*, 832 F.3d 1243, 1246 (11th Cir. 2016). Viewed in that manner, the factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the claim are true (even if doubtful in fact). *Bell Atlantic Corp. v. Twombley*, 550 U.S. 544, 555 (2007) (citations omitted). The Supreme Court has emphasized that "[t]o survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombley*, 550 U.S. at 570).

When evaluating a motion to dismiss under Rule 12(b)(6):

[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can

5

provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679. Factually unsupported allegations based "on information and belief" are not entitled to the assumption of truth. *See Scott v. Experian Info. Sols., Inc.*, No. 18-CV-60178, 2018 WL 3360754, at *6 (S.D. Fla. June 29, 2018) (J. Altonaga) ("Conclusory allegations made upon information and belief are not entitled to a presumption of truth, and allegations stated upon information and belief that do not contain any factual support fail to meet the *Twombly* standard.").

## B. *FLSA*

The FLSA requires every employer to "pay to each of his employees" a minimum wage. 29 U.S.C. § 206(a)(1). "Employee" is defined as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). "'Employ' includes to suffer or permit to work." 29 U.S.C. § 203(g). There is an exception for "an individual who volunteers to provide services for a public agency which is a State, a political subdivision of a State, . . . (i) if the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee to perform the services for which the individual volunteered; and (ii) such services are not the same type of services which the individual is employed to perform for such public agency." 29 U.S.C. § 203(e)(4)(A) ("the Public Agency Volunteer Exception").

The implementing regulations define a "volunteer" as:

(a) An individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise,

6

expectation or receipt of compensation for services rendered, is considered to be a volunteer during such hours.

29 C.F.R. § 553.101(a). They give examples of the kinds of services that volunteers

can perform:

(a) Individuals who are not employed in any capacity by State or local government agencies often donate hours of service to a public agency for civic or humanitarian reasons. *Such individuals are considered volunteers and not employees of such public agencies if their hours of service are provided with no promise expectation, or receipt of compensation for the services rendered, except for reimbursement for expenses, reasonable benefits, and nominal fees, or a combination thereof, as discussed in § 553.106.* There are no limitations or restrictions imposed by the FLSA on the types of services which private individuals may volunteer to perform for public agencies.

(b) Examples of services which might be performed on a volunteer basis when so motivated include helping out in a sheltered workshop or providing personal services to the sick or the elderly in hospitals or nursing homes; assisting in a school library or cafeteria; or driving a school bus to carry a football team or band on a trip. Similarly, individuals may volunteer as firefighters or auxiliary police, or volunteer to perform such tasks as working with retarded or handicapped children or disadvantaged youth, helping in youth programs as camp counselors, soliciting contributions or participating in civic or charitable benefit programs and volunteering other services needed to carry out charitable or educational programs.

29 C.F.R. § 553.104 (emphasis added). They cross-reference a different regulation,

which further discusses the kinds of payments, benefits, and fees that can be given

to volunteers:

(a) Volunteers may be paid expenses, reasonable benefits, a nominal fee, or any combination thereof, for their services without losing their status as volunteers.
. . .

(c) Individuals do not lose their volunteer status if they are provided

7

reasonable benefits by a public agency for whom they perform volunteer services. Benefits would be considered reasonable, for example, when they involve inclusion of individual volunteers in group insurance plans (such as liability, health, life, disability, workers' compensation) or pension plans or "length of service" awards, commonly or traditionally provided to volunteers of State and local government agencies, which meet the additional test in paragraph (f) of this section.

. . .

(f) *Whether the furnishing of expenses, benefits, or fees would result in individuals' losing their status as volunteers under the FLSA can only be determined by examining the total amount of payments made (expenses, benefits, fees) in the context of the economic realities of the particular situation.*

29 C.F.R. § 553.106 (emphasis added). Any expectation of compensation must be objectively reasonable. *See Brown v. N.Y.C. Dept. of Educ.,* 755 F.3d 154, 166 & n.10 (2d Cir. 2014).

"[T]he definition of "volunteer" must be applied in a common-sense way that takes into account the totality of the circumstances surrounding the relationship between the person providing services and the entity for which the services are provided, in light of the goals of the FLSA." *Todaro v. Township of Union,* 40 F. Supp. 2d 226, 230 (D.N.J. 1999). The Court looks "at the objective facts surrounding the services performed to determine whether the totality of the circumstances supports a holding that, under the statute and under the regulations, the non-paid regulars are volunteers." *Cleveland v. City of Elmendorf,* 388 F. 3d 522, 528 (citing *Tony & Susan Alamo Foundation v. Sec'y of Labor,* 471 U.S. 290, 295 (1985)); *accord Purdham v. Fairfax Cty. School Bd.,* 637 F.3d 421, 428 (4th Cir. 2011).

8

## IV.    DISCUSSION

The County argues that Plaintiffs are not "employees" under the FLSA because the right to play golf at a reduced fee is not "compensation" under the FLSA, or alternatively is a reasonable benefit. It further argues that Plaintiffs did not have an objectively reasonable expectation of wages or the equivalent. Plaintiffs respond that each round of golf was in-kind compensation worth approximately $91.

A. *Objectively Reasonable Expectations*

Even viewing the allegations in the SAC in the light most favorable to Plaintiffs and accepting that Plaintiffs subjectively believed they should be paid wages for their services, that belief would not be objectively reasonable.   Most importantly, the positions they accepted at Osprey Point were clearly and unequivocally advertised as volunteer positions.   The job posting does not mention wages.   The job posting also listed discounted golf as something the volunteer could "enjoy", equivalent to being outdoors and getting to know others with similar interests, neither of which is akin to compensable wages.   A person seeing that posting would not reasonably conclude that wages would be paid.   Similarly, working as a ranger or cart attendant at a public golf course is akin to other positions that are amenable to volunteerism.   *See* 29 C.F.R. § 553.104(b).   So, there was nothing inherent about the job or job duties that would reasonably suggest that wages necessarily would be paid.   In sum, it is not objectively reasonable to expect wages when you sign up for a position advertised for volunteers, that can be performed by volunteers, then do not receive wages for an extended period of time.   The only

objectively reasonable conclusion from those facts is that you have accepted a volunteer position that pays no wages.  Plaintiffs' argument to the contrary borders on frivolous.

B. *Reasonable Benefit*

Looking to the totality of the relationship between Plaintiffs and the County, the ability to play golf at a reduced fee was a reasonable benefit that was consistent with the economic realities of the particular situation.

Plaintiffs assert that the "reasonable benefit" exception does not apply because the record does not support a finding that discounted rounds of golf are "commonly and traditionally" provided to public agency volunteers. This argument is incorrect for several reasons.  First, the statute does not include a "commonly and traditionally" requirement; it speaks only of "reasonable benefits."  29 U.S.C. § 203(e)(4)(A). Second, the implementing regulation discusses certain benefits that are "commonly and traditionally" provided, but that is only as a non-exclusive example:

> Individuals do not lose their volunteer status if they are provided reasonable benefits by a public agency for whom they perform volunteer services. Benefits would be considered reasonable, *for example*, when they involve inclusion of individual volunteers in group insurance plans (such as liability, health, life, disability, workers' compensation) or pension plans or "length of service" awards, commonly or traditionally provided to volunteers of State and local government agencies, which meet the additional test in paragraph (f) of this section.

29 C.F.R. § 553.106(c) (emphasis added).  This regulation cross-references to paragraph (f), which states:

> Whether the furnishing of expenses, benefits, or fees would result in individuals' losing their status as volunteers under the FLSA can only

10

be determined by examining the total amount of payments made (expenses, benefits, fees) in the context of the economic realities of the particular situation."

29 C.F.R. § 553.106(f).  Thus, the ultimate touchstone is reasonableness under the totality of the circumstances of the economic relationship.

Here, the value of the discounted golf played by Mr. Adams (at $91 per round) was $2821 over a 38-month period (an annual average of $890).[2]  For Mr. Shaw, it was $3913 over a 7-month period.  For Mr. Kasmere, it was $8645 over a 42-month period (annual average of $2470).

Benefits in this amount were consistent with the economic realities of the situation.  Plaintiffs were volunteering at a golf course; they were offered discounted rounds of golf that could be used only on "certain days, times, and locations where discounted golf rounds were made available."  ¶¶ 15, 19, 23.  The benefit could only be used at County-owned courses. Providing this benefit did not directly cost the County anything.  If a Plaintiff opted to play a discounted round of golf, he still had to pay the County $5.  There is no indication in the SAC that allowing these discounted rounds precluded others (who would pay full price) from using the courses. Thus, there is no allegation that the County suffered a loss of other revenue. And, there is nothing in the SAC to refute the logical inference that there was no material marginal cost to the County from allowing an extra round of golf to be played. Finally, the SAC lacks any allegation that this benefit could be monetized by transferring it

---

[2] 31 rounds at $91 per round = $2821.

11

to a third party.  All of these factors support a finding that Plaintiffs were receiving a reasonable, non-compensatory, limited, golf-related benefit for volunteering at a golf course.

This conclusion is consistent with the examples in the Department of Labor regulations.  Under the regulations, reasonable benefits include "inclusion of individual volunteers in group insurance plans (such as liability, health, life, disability, workers' compensation) or pension plans or 'length of service' awards." Providing someone with insurance or permitting them to participate in a pension plan is a more significant (or at least equal) benefit than a golf course providing discounted rounds of golf.

This conclusion is also consistent with the Fourth Circuit's holding in *Purdham*.  There, a school security employee also served as golf coach.  He brought an FLSA action seeking overtime for his coaching services.  He received an annual coaching stipend of approximately $2100, plus expense reimbursement, and a mileage allowance.  The Fourth Circuit held that the stipend was a "nominal fee" for purposes of the Public Agency Volunteer Exception.  637 F.3d at 434.  The Court of Appeals held as a matter of law that the stipend was not "compensation" for service rendered because it was paid without regard to the number of hours worked.  It also noted that the amortized hourly rate was less than the federally-mandated minimum wage.  *Id.*

Here, although the discounted golf privilege only accrues after a minimum number of hours are worked, once it is implicated, it is not tied to the number of hours

12

worked.  And, the value of the benefit to Mr. Adams and Mr. Kasmere is comparable to, or less than the annual stipend in *Purdham*.  The SAC does not allege the number of hours that each Plaintiff worked, so it does not create an inference that the value of the discounted golf benefit exceeded minimum wage.

Plaintiffs mistakenly argue several times that the Court is bound by non-factual, irrelevant, or unsupported allegations in the SAC.  ECF No. 60 at 4 (Plaintiffs received "compensation" and "in-kind compensation"), 5 (Plaintiffs believed they were receiving "compensation"). Plaintiffs confuse facts worthy of the assumption of truth (which the Court must accept as true at the 12(b)(6) stage) with legal conclusions or unsupported allegations (which it need not accept as true). Whether something rises to the level of "compensation" or "in-kind compensation" is a legal conclusion, which the U.S. Supreme Court says is not entitled to the assumption of truth at the 12(b)(6) stage.  *Iqbal,* 556 U.S. at 679. And, what Plaintiffs subjectively expected to receive is irrelevant to whether an objectively reasonable person would have expected to be paid wages for these positions.  Finally, although the SAC alleges Plaintiffs were "required to follow strict rules with regard to the performance of his services, such as not sitting while he was on duty," *(e.g.,* ¶ 18), the SAC does not contain any other facts to identify the "strict rules."

The Second Amended Complaint fails to allege sufficient facts to establish a plausible claim that Plaintiffs were "employees" under the FLSA. For that reason, Count I must be dismissed under Rule 12(b)(6).

C. *State Law Claims*

The state-law minimum wage claims in Count II must be interpreted consistent with the FLSA. *Llorca v. Sheriff, Collier Cnty, Florida*, 893 F.3d 1319, 1328 (11th Cir. 2018) ("The FMWA is to be interpreted as consistent with the FLSA."). Therefore, for the same reasons that Count I fails to state a claim for relief under the FLSA, Count II must be dismissed.

D. *Retaliation*

The FLSA makes it unlawful "for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint" related to non-payment of wages. 29 U.S.C. § 215(a)(3). For the reasons discussed above, the SAC fails to plead a plausible claim that Mr. Kasmere was an "employee" of the County. For that reason, alone, Count III must be dismissed.

E. *With or Without Prejudice*

This dismissal is with prejudice. Although "[t]he court should freely give leave [to amend a complaint] when justice so requires," Fed. R. Civ. P. 15(a)(2), "[a]fter a plaintiff's first opportunity to amend, leave for additional amendments may be denied because of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previous allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment.'" *In Re Zantac (Ranitidine) Prods. Liab. Litig.,* No. 20-MD-2924-RLR, 2021 WL 2865869, at * 23 (S.D. Fla. July 8, 2021) (J. Rosenberg) (citing *Andrx Pharms., Inc. v. Elan Corp., PLC,* 421 F.3d 1227, 1236 (11th Cir. 2005)). Here,

14

permitting a Third Amended Complaint would be futile.  Plaintiffs have been given multiple opportunities to plead sufficient facts to establish that they were "employees" under the relevant statutes and that the Public Agency Volunteer Exception does not apply.  They have repeatedly failed to make a sufficient showing. There is no reason to believe that they could now plead additional facts that would overcome the deficiencies discussed above.

## V.    CONCLUSION

WHEREFORE, Defendant's Motion to Dismiss the Second Amended Complaint is GRANTED WITH PREJUDICE.

**DONE and ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 4st day of October 2021.

_____
BRUCE E. REINHART
UNITED STATES MAGISTRATE JUDGE

15