# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

May 10, 2024



FILED BY ____JG____ D.C.
May 10, 2024
ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number: 23-11065-HH
Case Style: David Adams, et al v. Palm Beach County
District Court Docket No: 9:21-cv-80127-BER

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Clerk's Office Phone Numbers

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

Enclosure(s)

MDT-1 Letter Issuing Mandate

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-11065

_____

DAVID ADAMS,
on behalf of themselves and others similarly situated,
MICHAEL SHAW,
on behalf of themselves and others similarly situated,
GERALD KASMERE,
on behalf of themselves and others similarly situated,

                                    Plaintiffs-Appellants,

*versus*

PALM BEACH COUNTY,

                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cv-80127-BER

_____

Case 9:21-cv-80127-BER   Document 78   Entered on FLSD Docket 05/10/2024   Page 3 of 19
USCA11 Case: 23-11065   Document: 45-1   Date Filed: 05/10/2024   Page: 2 of 2

2                                                                          23-11065

## JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: March 12, 2024

For the Court: DAVID J. SMITH, Clerk of Court

**ISSUED AS MANDATE 5/10/2024**

[PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-11065

_____

DAVID ADAMS,
MICHAEL SHAW,
GERALD KASMERE,
on behalf of themselves and others similarly situated,

                                           Plaintiffs-Appellants,

*versus*

PALM BEACH COUNTY,

                                           Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 9:21-cv-80127-BER

_____

Before WILLIAM PRYOR, Chief Judge, and JILL PRYOR and MARCUS, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether golf attendants who provided services at Palm Beach County golf clubs in exchange for discounted golf were "employees" under the Fair Labor Standards Act, *see* 29 U.S.C. § 203(e). David Adams, Gerald Kasmere, and Michael Shaw seek to represent a class of bag-drop attendants, driving-range attendants, and course rangers at County-owned world-class golf clubs. The attendants allege that the County's use of their services violated the minimum-wage and anti-retaliation provisions of the Act, *id.* §§ 206, 215(a)(3), and the Florida Minimum Wage Act and the Florida Constitution, FLA. STAT. § 448.110; FLA. CONST. art. X, § 24. The district court dismissed the attendants' complaint because it concluded that the attendants were public-agency volunteers and not employees under the Act and Florida law. We affirm.

## I. BACKGROUND

David Adams, Gerald Kasmere, and Michael Shaw served as golf attendants at the Osprey Point Golf Club, a "world-class" golf club owned by Palm Beach County. The County owns four such clubs, which it operates for profit. The attendants responded to a County Parks and Recreation Department advertisement seeking "volunteers" to perform services in exchange for discounted golf, among other benefits. The advertisement states, "Volunteers Needed"; explains that "[v]olunteers serve as course rangers,

Case 9:21-cv-80127-BER   Document 78   Entered on FLSD Docket 05/10/2024   Page 6 of 19
USCA11 Case: 23-11065   Document: 40-1   Date Filed: 03/12/2024   Page: 3 of 14

23-11065                Opinion of the Court                3

driving range attendants and bag drop attendants"; and promotes that "Osprey Point volunteers enjoy being outdoors, getting to know others with similar interests and reduced fees to play and practice golf."





The attendants performed services including greeting customers; carrying and loading customers' golf clubs; cleaning balls, clubs, and carts; retrieving carts from and returning carts to cart barns; patrolling the range and policing the pace of play; raking sand traps and filling divots; collecting trash; and retrieving balls from the driving range. Attendants were not allowed to choose their duties and were required to follow specific service rules,

Case 9:21-cv-80127-BER   Document 78   Entered on FLSD Docket 05/10/2024   Page 7 of 19
USCA11 Case: 23-11065   Document: 40-1   Date Filed: 03/12/2024   Page: 4 of 14

4                        Opinion of the Court                    23-11065

including not sitting while on duty. According to the attendants, their services "enhance[d] the value of the golfing experience," were "essential to attract customers," and were "integral to the operation" of the County's clubs. Privately owned golf clubs must pay wages to attendants providing comparable services.

The County treated attendants as volunteers. Attendants were allowed to accept tips but were neither promised nor paid wages. But attendants who worked at least one seven-hour shift a week were promised "unlimited" rounds of golf at substantially discounted rates, limited to certain days, times, and locations. The County typically charged $96 for a round of golf at Osprey Point, but eligible volunteers could play for only $5. The County offered similar discounts to volunteers at its other courses. The attendants calculate that someone who worked the required seven hours a week, and who played five rounds of golf a week, could receive $23,660 in savings a year (or $65 an hour worked).

The attendants participated in the County program for multiple years: Adams provided services for almost four years, Kasmere for over four years, and Shaw for over seven years. All three availed themselves of the benefit of reduced golf fees. The complaint provides information on the attendants' use of their discounts over only specific time periods. It explains that from October 2016 through November 2019, Adams received 31 discounted rounds of golf amounting to $2,821 in savings, for an average value of $890 a year or $74 a month. From October 2016 through March 2020, Kasmere received 95 discounted rounds of golf amounting to $8,645 in

Case 9:21-cv-80127-BER   Document 78   Entered on FLSD Docket 05/10/2024   Page 8 of 19
USCA11 Case: 23-11065    Document: 40-1    Date Filed: 03/12/2024    Page: 5 of 14

23-11065                Opinion of the Court                5

savings, for an average value of $2,470 a year or $206 a month. And from February through August 2019, Shaw received 43 discounted rounds of golf amounting to $3,913 in savings, for an average value of $559 a month.

Kasmere was furloughed during the Covid–19 pandemic and attempted to return to Osprey Point in October 2020. The Osprey Point manager told Kasmere that the club "needed" attendants to return because "some workers who had previously been in those positions were unable or unwilling to return to work because of the pandemic." The manager also explained that, as part of the club's Covid policies, attendants would no longer clean golf clubs or load customers' golf bags, and tip jars would be removed. But when Kasmere complained that removing the tip jars "would make it even harder" on the attendants, the manager informed Kasmere that no positions were available.

The attendants filed a putative class action. The operative complaint alleges violations of the minimum-wage provision of the Fair Labor Standards Act, 29 U.S.C. § 206, (count I); the Florida Minimum Wage Act and Florida Constitution, FLA. STAT. § 448.110; FLA. CONST. art. X, § 24, (count II); and (as to Kasmere only) the anti-retaliation provision of the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3), (count III). The district court dismissed the complaint for failure to state a claim because it concluded that the attendants were public-agency volunteers not covered under the federal Act or Florida law. We dismissed an earlier appeal for lack of jurisdiction because the district court failed to address the claims of

Case 9:21-cv-80127-BER   Document 78   Entered on FLSD Docket 05/10/2024   Page 9 of 19
USCA11 Case: 23-11065   Document: 40-1   Date Filed: 03/12/2024   Page: 6 of 14

6                    Opinion of the Court                    23-11065

additional opt-in plaintiffs, *Adams v. Palm Beach County*, No. 21-13825, 2022 WL 17246908, at *3 (11th Cir. Nov. 28, 2022), and on remand, the district court dismissed as to the opt-in plaintiffs for the reasons stated in its previous order.

## II. STANDARD OF REVIEW

We review *de novo* a dismissal for failure to state a claim, accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff. *Ounjian v. Globoforce, Inc.*, 89 F.4th 852, 857 (11th Cir. 2023). We limit our consideration to the pleadings and the attached exhibits. *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993).

## III. DISCUSSION

An individual must be an "employee" under the Fair Labor Standards Act to be protected by its minimum-wage and anti-retaliation provisions. *See* 29 U.S.C. §§ 206(a), 215(a)(3). The Act defines an "employee" as "any individual employed by an employer," *id.* § 203(e)(1), and it defines "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee," including a public agency, *id.* § 203(d). The touchstone of the employee inquiry is one of "economic reality." *Tony & Susan Alamo Found. v. Sec'y of Lab.*, 471 U.S. 290, 301 (1985) (citation and internal quotation marks omitted).

The Act exempts a public-agency volunteer from its definition of employee:

Case 9:21-cv-80127-BER Document 78 Entered on FLSD Docket 05/10/2024 Page 10 of 19
USCA11 Case: 23-11065 Document: 40-1 Date Filed: 03/12/2024 Page: 7 of 14

23-11065 Opinion of the Court 7

> The term "employee" does not include any individual who volunteers to perform services for a public agency . . . if—
>
> (i) the individual receives no compensation or is paid expenses, reasonable benefits, or a nominal fee . . .; and
>
> (ii) such services are not the same type of services which the individual is employed to perform for such public agency.

29 U.S.C. § 203(e)(4)(A). Whether an individual is a volunteer or an employee "is a matter of law to be determined by the court." *E.g.*, *Purdham v. Fairfax Cnty. Sch. Bd.*, 637 F.3d 421, 428 (4th Cir. 2011); *see also Castillo v. Givens*, 704 F.2d 181, 185 (5th Cir. 1983).

The Act does not define "volunteer." But Department of Labor regulations provide that a volunteer is an "individual who performs hours of service for a public agency for civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered." 29 C.F.R. § 553.101(a). An individual need "only be motivated *in part*" by civic or charitable reasons to qualify as a volunteer. *McKay v. Miami-Dade County*, 36 F.4th 1128, 1138 (11th Cir. 2022) (emphasis added). And we agree with our sister circuits that the regulatory definition should be applied "in a commonsense manner, which takes into account the totality of the circumstances surrounding the relationship between the individual providing services and the entity for which the services are provided." *Purdham*, 637 F.3d at 428 (citation and internal

Case 9:21-cv-80127-BER   Document 78   Entered on FLSD Docket 05/10/2024   Page 11 of 19
USCA11 Case: 23-11065    Document: 40-1    Date Filed: 03/12/2024    Page: 8 of 14

8                         Opinion of the Court                    23-11065

quotation marks omitted); *see also Cleveland v. City of Elmendorf*, 388 F.3d 522, 528 (5th Cir. 2004) (we review "the objective facts surrounding the services performed to determine whether the totality of the circumstances" establishes volunteer status).

To determine whether the public-agency volunteer exemption applies, we must evaluate whether the attendants fall under the statutory definition because they served a public agency and received either "no compensation" or only "expenses, reasonable benefits, or a nominal fee" for their services. 29 U.S.C. § 203(e)(4)(A)(i). We must also evaluate whether the attendants fall under the regulations, by being at least "in part" motivated by "civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation." *McKay*, 36 F.4th at 1137 (quoting 29 C.F.R. § 553.101(a)). We exercise common sense and consider the totality of facts and circumstances when applying the regulatory definition. *See City of Elmendorf*, 388 F.3d at 528.

No party disputes that the attendants served a public agency, so we proceed in two parts. First, we explain that the attendants received discounted rounds of golf as "reasonable benefits" for their services. *See* 29 U.S.C. § 203(e)(4)(A)(i). Second, we explain that the attendants did not perform services for the "promise, expectation or receipt" of employee compensation, *see* 29 C.F.R. § 553.101(a), because they applied for "volunteer" positions advertised to provide only "being outdoors, getting to know others with similar interests and reduced fees to play and practice golf" as benefits. We conclude that the attendants are not employees and

Case 9:21-cv-80127-BER   Document 78   Entered on FLSD Docket 05/10/2024   Page 12 of 19
USCA11 Case: 23-11065    Document: 40-1    Date Filed: 03/12/2024    Page: 9 of 14

23-11065               Opinion of the Court                        9

cannot state a minimum-wage or anti-retaliation claim under the Act or Florida law.

### A. The Attendants are Statutory Volunteers Who Received Only "Reasonable Benefits" for Their Services.

The attendants are public-agency volunteers because they received discounted golf as "reasonable benefits"—not inadequate compensation—for their services. *See* 29 U.S.C. § 203(e)(4)(A)(i). The attendants argue that they were employees who worked for "compensation," but less than minimum wage, in the form of thousands of dollars of golf discounts. We disagree. Reduced fees on golf did not trigger the loss of the attendants' volunteer status.

Whether benefits cause the loss of volunteer status "can only be determined by examining the total amount of payments made (expenses, benefits, fees) in the context of the economic realities of the particular situation." 29 C.F.R. § 553.106(f). Likewise, the Supreme Court has required us to anchor to "economic reality" when asking if an individual is an employee protected by the Act. *See Alamo*, 471 U.S. at 301 (citation and internal quotation marks omitted). The Act instructs us to evaluate only the benefits that the attendants actually received. 29 U.S.C. § 203(e)(4)(A)(i) (volunteer exemption turns on what an individual "receives" or "is paid").

Reduced-fee access to a world-class golf club was not, as a matter of economic reality, anything more than a perk for the attendants' volunteer services. *See Alamo*, 471 U.S. at 301. Adams, Kasmere, and Shaw applied for positions plainly advertised as "volunteer" positions, with no mention of wages or cash payment. The

Case 9:21-cv-80127-BER   Document 78   Entered on FLSD Docket 05/10/2024   Page 13 of 19
USCA11 Case: 23-11065   Document: 40-1   Date Filed: 03/12/2024   Page: 10 of 14

10                        Opinion of the Court                  23-11065

only pecuniary benefits that the attendants were promised or received were reduced fees for golf and the opportunity to receive tips from customers during some period that they served as attendants. To be sure, the Supreme Court has held that in-kind benefits may constitute "wages in another form," which qualify as compensation under the Act. *See Alamo*, 471 U.S. at 293. But the *Alamo* Court was referring to "food, shelter, clothing, transportation and medical benefits"—in other words, goods and services that could substitute for wages "under the economic reality test of employment." *Id.* (citation and internal quotation marks omitted). Reduced fees on rounds of golf—an inherently recreational activity—are hardly analogous. And the monthly value of the attendants' savings was minimal: over the periods specified in the pleadings, Adams received 31 discounted rounds of golf valued at $2,821 in savings, or about $74 a month; Kasmere received 95 discounted rounds of golf valued at $8,645 in savings, or about $206 a month; and Shaw received 43 discounted rounds of golf valued at $3,913 in savings, or about $559 a month. *Cf. Purdham*, 637 F.3d at 434 (yearly stipends of $2,114 and $2,073 did not cause loss of golf coach's volunteer status).

### B. The Attendants are Volunteers under the Regulations.

The attendants assert that they were not volunteers under the regulations for two reasons. First, they argue that they did not engage in services traditionally associated with volunteerism. The County replies that their services *did* provide civic benefits for the County's residents. Second, the attendants argue that the district

23-11065               Opinion of the Court                    11

court erred by relying on the attendants' lack of expectation of compensation. The County replies that the district court correctly applied an "objective reasonableness" test—the attendants were not promised and could not reasonably have expected any compensation. The County is correct on both points.

The regulations define a volunteer as an individual who serves for "civic, charitable, or humanitarian reasons, without promise, expectation or receipt of compensation for services rendered." 29 C.F.R. § 553.101(a). The regulations provide the following examples of volunteer activities:

> [I]ndividuals may volunteer as firefighters or auxiliary police, or volunteer to perform such tasks as working with retarded or handicapped children or disadvantaged youth, helping in youth programs as camp counselors, soliciting contributions or participating in civic or charitable benefit programs and volunteering other services needed to carry out charitable or educational programs.

*Id.* § 553.104(b). But the regulations also state that there "are no limitations or restrictions imposed by the [Act] on the types of service which private individuals may volunteer to perform for public agencies." *Id.* § 553.104(a).

The attendants argue that their activities were "qualitatively different" from the examples of volunteerism listed in the regulations, and that they did not work to "improve their community or the lives of its residents." But the regulations do not limit the kinds of activities that qualify as volunteer services. *Id.* Nor do the

Case 9:21-cv-80127-BER   Document 78   Entered on FLSD Docket 05/10/2024   Page 15 of 19
USCA11 Case: 23-11065    Document: 40-1    Date Filed: 03/12/2024    Page: 12 of 14

12                        Opinion of the Court                    23-11065

attendants dispute that public golf courses provide County citizens with "civic" benefits. *See McKay*, 36 F.4th at 1137. For example, municipalities traditionally maintain public parks and outdoor recreational facilities to enhance "health and quality of life" in the community; public courses are a more affordable "gateway" option for golf newcomers; and the County maintained a teaching facility that introduced newcomers to golf. The attendants also acknowledge that their services were crucial to the County's ability to maintain golfing courses for the public: the attendants were "essential to attract customers" and were "integral to the operation" of the course. So by their own admission, the attendants chose to serve in positions that they knew were crucial to providing civic benefits to County citizens.

The regulations also provide that any "promise, expectation or receipt of compensation for services rendered" precludes the finding that an individual is a public-agency volunteer. 29 C.F.R. § 553.101(a). But the receipt of "reasonable benefits" does not qualify as the receipt of compensation. *Id.* § 553.106(a). And any "expectation" of compensation must be "objectively reasonable." *Brown v. N.Y.C. Dep't of Educ.*, 755 F.3d 154, 166 (2d Cir. 2014). To find otherwise would allow individuals to "wish themselves (however unreasonably) into being owed . . . wages, despite the (reasonable) belief of public agencies that they were accepting volunteered services." *Id.*

The district court correctly ruled that the attendants were not promised, could not have reasonably expected, and did not receive

Case 9:21-cv-80127-BER   Document 78   Entered on FLSD Docket 05/10/2024   Page 16 of 19
USCA11 Case: 23-11065     Document: 40-1     Date Filed: 03/12/2024     Page: 13 of 14

23-11065               Opinion of the Court                    13

any "compensation" for their services. As we have explained, the attendants were not promised and did not receive "compensation" because reduced golf fees are not "wages in another form" under any economic reality. *See Alamo*, 471 U.S. at 293. Nor did the attendants have an objectively reasonable expectation of compensation. The County's advertisement, featuring benefits like "being outdoors, getting to know others with similar interests and reduced fees to play and practice golf," could not be objectively construed as a promise of payment for work. The County unequivocally advertised the position to volunteers. Not even the attendants assert that they were promised wages. And Adams, Kasmere, and Shaw remained with the County program, under its terms, for nearly four, over four, and over seven years, respectively. We agree with the district court that it is unreasonable "to expect wages when you sign up for a position advertised for volunteers" and then "do not receive wages for an extended period of time."

The district court did not err. The attendants were not "employees" under the Act. And the attendants' Florida law claims fail because the Florida Act must be interpreted "as consistent with" the federal Act. *Llorca v. Sheriff, Collier Cnty.*, 893 F.3d 1319, 1328 (11th Cir. 2018) ("Only those individuals entitled to receive the federal minimum wage under the federal Fair Labor Standards Act and its implementing regulations shall be eligible to receive the state minimum wage pursuant to [the Florida Constitution] and [the Florida Minimum Wage Act]." (quoting FLA. STAT. § 448.110(3))).

Case 9:21-cv-80127-BER Document 78 Entered on FLSD Docket 05/10/2024 Page 17 of 19
USCA11 Case: 23-11065 Document: 40-1 Date Filed: 03/12/2024 Page: 14 of 14

14 Opinion of the Court 23-11065

## IV. CONCLUSION

We **AFFIRM** the judgment in favor of Palm Beach County.

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

March 12, 2024

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 23-11065-HH
Case Style: David Adams, et al v. Palm Beach County
District Court Docket No: 9:21-cv-80127-BER

Opinion Issued
Enclosed is a copy of the Court's decision issued today in this case. Judgment has been entered today pursuant to FRAP 36. The Court's mandate will issue at a later date pursuant to FRAP 41(b).

Petitions for Rehearing
The time for filing a petition for panel rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing is timely only if received in the clerk's office within the time specified in the rules. **A petition for rehearing must include a Certificate of Interested Persons and a copy of the opinion sought to be reheard.** See 11th Cir. R. 35-5(k) and 40-1.

Costs
Costs are taxed against Appellant(s) / Petitioner(s).

Bill of Costs
If costs are taxed, please use the most recent version of the Bill of Costs form available on the Court's website at www.ca11.uscourts.gov. For more information regarding costs, see FRAP 39 and 11th Cir. R. 39-1.

Attorney's Fees
The time to file and required documentation for an application for attorney's fees and any objection to the application are governed by 11th Cir. R. 39-2 and 39-3.

Appointed Counsel
Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation via the eVoucher system no later than 45 days after issuance of the mandate or the filing of a petition for writ of certiorari. Please contact the CJA Team at (404) 335-6167 or

cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

<u>Clerk's Office Phone Numbers</u>

| | | | |
|---|---|---|---|
| General Information: | 404-335-6100 | Attorney Admissions: | 404-335-6122 |
| Case Administration: | 404-335-6135 | Capital Cases: | 404-335-6200 |
| CM/ECF Help Desk: | 404-335-6125 | Cases Set for Oral Argument: | 404-335-6141 |

OPIN-1 Ntc of Issuance of Opinion